Harlan J. Protass (HP-2826)
LAW OFFICES OF HARLAN J. PROTASS, PLLC
305 Madison Avenue – Suite 1301
New York, New York 10165
Tel. 212-922-1080
Fax. 212-949-8255

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------x
                                                       :
UNITED STATES OF AMERICA                               :
                                                       :
        – v –                                          :
                                                       :        Docket No. 08-CR-76 (NGG)
JOSEPH AGATE, et al.,                                  :
                                                       :
                              Defendants.              :
                                                       :
------------------------------------------------------x


MEMORANDUM OF LAW OF DEFENDANT FRANK CALI IN OPPOSITION TO
THE GOVERNMENT'S MOTIONS FOR PERMANENT ORDERS OF DETENTION

Frank Cali, by his undersigned attorneys, respectfully submits this memorandum of law in opposition to the Memorandum of Law In Support of the Government's Motions for Permanent Orders of Detention (the "Gov't Mem."), dated February 7, 2008. As is further detailed below, we respectfully submit that Mr. Cali should be released pending trial pursuant to the provisions of 18 U.S.C. § 3141, et seq.[1]

BACKGROUND

On February 7, 2008 the Government unsealed a 169 page Indictment charging 62 defendants with various crimes, arresting the majority of those defendants (including Mr. Cali) on the same day. The Government now unreasonably seeks to detain Mr. Cali pending trial notwithstanding that:

- Mr. Cali has never been arrested, charged or convicted of any criminal offense. Indeed, even the Government concedes that Mr. Cali "has no arrests or convictions." (Gov't Mem. at 21.)

- Mr. Cali has strong and longstanding ties to the community. He has lived and worked in the New York area for his entire life (as has his entire immediate family), and currently resides on Staten Island with his wife and three children (ranging in age from almost 2 to 5). Additionally, Mr. Cali operates a business that has five employees, all of whom likely will be put out of work if he is not released.

- Mr. Cali is charged in only 2 of the 80 counts in the Indictment (counts 38 and 39 -- extortion conspiracy and extortion, respectively).

- Mr. Cali's name appears substantively on only 2 of the Indictment's 169 pages (pages 133 and 134).

- Mr. Cali is not charged in the alleged racketeering conspiracy that comprises more than half of the 169 page Indictment.

---

[1]     Mr. Cali has been held at the Metropolitan Detention Center since the date of his arrest. His access to legal counsel has been severely restricted pursuant to a separation order that allows for the presence in the main visiting room at the MDC of only one defendant in the referenced matter at any given time.

- Mr. Cali is unique among the group of 18 defendants that the Government seeks to detain. Specifically, 16 of those 18 defendants are charged in the alleged racketeering conspiracy. Only Mr. Cali and one other defendant are not. And Mr. Cali is in a materially different position than that defendant. According to the Government, in March 2006 that defendant pled guilty in the United States District Court for the Southern District of New York to racketeering conspiracy charges, was sentenced to 46 months imprisonment and, perhaps most significantly, is already in custody. (Gov't Mem. at 130-31.) By contrast and as detailed above and in the Gov't Mem., Mr. Cali has no criminal history whatsoever.[2]

- 18 other defendants were charged with conspiracy extortion/extortion (like Mr. Cali) but were not charged with the alleged racketeering conspiracy (also like Mr. Cali). Yet, of this group of similarly situated defendants, the Government seeks to detain only Mr. Cali.

- 5 other defendants were charged with both conspiracy extortion/extortion (like Mr. Cali) and the alleged racketeering conspiracy (unlike Mr. Cali). Yet, the Government did not seek the detention of these 5 defendants.

## ARGUMENT

The Government has failed to establish that there are no conditions or combination of conditions that could reasonably assure Mr. Cali's presence as required by this Court and has not established that, if released, Mr. Cali would endanger the safety of any person or the community. Additionally, all four factors that the Bail Reform Act directs courts to consider when deciding questions of pre-trial release favor Mr. Cali's release. Accordingly and as detailed below, we have suggested a specific combination of conditions that we respectfully submit would reasonably assure Mr. Cali's presence and ensure the safety of the community, and respectfully submit that Mr. Cali should be released pursuant to those conditions.

---

[2]      Additionally, one of the defendants who the Government sought to detain has been released on $1,000,000 bond notwithstanding that he pled guilty in August 2007 to federal racketeering and securities fraud charges.

I.

The Bail Reform Act Favors Pre-Trial Release

The Eighth Amendment to the United States Constitution states that "[e]xcessive bail shall not be required." U.S. Const. amend VIII. Consistent with this prohibition, the Bail Reform Act "requires" courts to order the pre-trial release of defendants "'unless the [court] determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.'" United States v. Sabhnani, 493 F.3d 63, 75 (2d Cir. 2007) (quoting 18 U.S.C. § 3142(b)). See also United States v. Vasconcellos, 519 F. Supp. 2d 311, 315 (N.D.N.Y. 2007) ("In general, the court must release a defendant on personal recognizance, unsecured bond, or specified conditions, whichever is the least restrictive necessary to assure the defendant's appearance and the safety of others and the community"). Indeed, if a court "determines that a defendant's release on an unsecured bond presents a risk of flight . . . the law still favors pre-trial release 'subject to the least restrictive further conditions, or combination of conditions, that [the court] determines will reasonably assure the appearance of the person as required.'" Sabhnani, 493 F.3d at 75 (quoting 18 U.S.C. § 3142(c)(1)(B)). Simply put, the law "favors bail release." Id.

In determining whether or not a defendant should be released pending trial, the Government must, first, "establish by a preponderance of the evidence that the defendant, if released, presents an actual risk of flight." Sabhnani, 493 F.3d at 75 (citation omitted). Assuming it is able to satisfy this burden, the Government must then, second, "demonstrate by a preponderance of the evidence that no condition or combination of conditions could be imposed on the defendant that would reasonably assure his presence in court." Id. (citations omitted). In conducting this analysis, the Bail Reform Act details four factors that courts must consider: (1)

3

the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, criminal history, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. See 18 U.S.C. § 3142(g).

II.

No <em>Per Se</em> Rule Exists Requiring The Pre-Trial Detention Of Defendants<br>Alleged By The Government To Be Associated With Organized Crime

Notwithstanding the Government's insinuation that pre-trial release should be denied whenever it alleges that a defendant is affiliated with purported organized crime, the principles described above apply to all defendants. See United States v. Cirillo, 149 Fed. Appx. 40, 43 (2d Cir. 2005) ("there is no *per se* rule requiring the detention of organized crime leaders; rather, an individualized determination . . . is appropriate"); United States v. Cantarella, No. CR 02-0307 (S-2) (NGG), 2002 WL 31946862, at *3 (E.D.N.Y. Nov. 26, 2002) (noting that defendant's "alleged membership in an organized crime family" is "not dispositive" on the question of pre-trial release). Indeed, the magic words "organized crime" added to the Indictment are legally insufficient to require the pre-trial detention of a presumptively innocent man.

In this regard, it bears noting that all of the cases upon which the Government relies in support of its assertion that Mr. Cali's purported association with organized crime favor pre-trial detention are inapposite because they all involve charges of more serious conduct than that with which Mr. Cali has been charged. See, e.g., United States v. Ferranti, 66 F.3d 540, 541 (2d Cir. 1995) (defendant accused of conspiracy to commit arson, arson resulting in death,

4

witness tampering and mail fraud); United States v. Colombo, 777 F.2d 96, 97 (2d Cir. 1985)

(charges of "state and federal crimes, including murder, robbery, narcotics violations, arson,

extortion, threats, assaults, illegal gambling, bribery, interstate theft and transportation of stolen

goods, extortion and mail/wire fraud"); United States v. Salerno, 631 F. Supp. 1364, 1365-66

(S.D.N.Y. 1986) (allegations of racketeering conspiracy, sixteen counts of mail fraud, wire fraud,

at least seven extortion counts, one count of illegal numbers and one count of illegal

bookmaking), order vacated, 794 F.2d 64 (2d Cir.), order reinstated, 829 F.2d 345 (2d Cir.

1987).[3]

III.

Mr. Cali Does Not Present A Risk Of Flight

The Government maintains that Mr. Cali constitutes a flight risk because: (1) he

"has substantial ties to Italy and thus the ability to seek refuge outside the United States"; and (2)

he "faces 20 years' imprisonment on each count if convicted." Neither reason proffered is

sufficient to establish that Mr. Cali presents a risk of flight. See Vasconcellos, 519 F. Supp. 2d

at 317 (pertinent factors in considering whether a defendant presents a flight risk are "a severe

---

[3]    See also Cirillo, 149 Fed. Appx. at 41 (substantive and conspiratorial charges of racketeering); United States v. Millan, 4 F.3d 1038, 1040 (2d Cir. 1993) (conspiracy to distribute heroin), cert. denied, 511 U.S. 1006, 114 S.Ct. 1375 (1994); United States v. Orena, 986 F.2d 628, 628 (2d Cir. 1993) ("RICO charges based on predicate acts of murder, loansharking, and illegal possession of weapons"); United States v. Gotti, 219 F. Supp. 2d 296, 297 (E.D.N.Y. 2002) (charges of "racketeering, racketeering conspiracy, money laundering conspiracy and eight substantive counts of money laundering"), aff'd, United States v. Ciccone, 312 F.3d 535, 543 (2d Cir. 2002); Cantarella, 2002 WL 31946862, at *1 (charges of arson/arson conspiracy, kidnapping/robbery, kidnapping/robbery conspiracy and loansharking conspiracy); United States v. Agnello, 101 F. Supp. 2d 108, 110 (E.D.N.Y. 2000) (allegations of "multiple acts of conspiracy and attempted and actual extortion and arson"); United States v. Defede, 7 F. Supp. 2d 390, 391 (S.D.N.Y. 1998) ("alleged RICO conspiracy, through a pattern of racketeering activity, with conspiracy to extort money and property from businesses in New York's garment center, and with five substantive extortion counts"); United States v. Bellomo, 944 F. Supp. 1160, 1162 (S.D.N.Y. 1996) (charges of racketeering and three predicate acts of racketeering-murder and/or murder conspiracy, extortion and labor racketeering); United States v. Masotto, 811 F. Supp. 878, 881-82 (E.D.N.Y. 1993) (ten count indictment including arson conspiracy and robbery).

5

sentence; an extensive criminal history; a lack of community ties; hidden assets; and the use of false names") (citing United States v. Jackson, 823 F.2d 4, 7 (2d Cir. 1987)).

Initially, Mr. Cali is a first-generation American. While he was born in the United States, his parents were born in Italy, where numerous aunts, uncles and cousins continue to live. That he continues to have strong familial ties to his parents' country of origin should therefore come as no surprise to the Government or this Court. Indeed, the same likely could be said of every first-generation American. Yet surely the Government would not speculate that every first-generation American charged with a criminal offense presents a flight risk simply because of their birth status. See United States v. Bodmer, No. 03 CR 947 (SAS), 2004 WL 169790, at *2 (S.D.N.Y. Jan. 28, 2004) (rejecting as "mere speculation" Government's assertion that accomplished Swiss attorney who specialized in offshore accounts posed a flight risk because he "likely has offshore accounts himself") (emphasis in original).

In any event (and as detailed below), Mr. Cali: (1) has lived and worked in the New York area for his entire life; (2) resides on Staten Island with his wife of almost seven years and three young children, ranging in age from almost 2 to 5 years old; (3) is in the process of renovating a home that will, when complete, be his primary residence; (4) currently resides with his wife's mother in a home on Staten Island; (5) operates a business that has five employees who rely on him for their livelihood; and (6) has parents and other family who live in the community. Moreover, upon information and belief, Mr. Cali has travelled to Italy only approximately two times in the past five years. Simply put, Mr. Cali's ties to the community run deep and establish that he presents no risk of flight if released pending trial.

Additionally, while the Government notes that each offense with which Mr. Cali has been charged carries a maximum penalty of twenty years in prison, its reliance on this potential penalty as a basis for establishing that Mr. Cali poses a flight risk is a distortion. As the Government knows, the advisory Guidelines range for the offense with which Mr. Cali has been charged may be as low as 27 to 33 months imprisonment if he is convicted at trial (depending on any enhancements that the Government may seek to establish).

IV.

### Mr. Cali Does Not Pose A Danger To Any Person Or The Community

The Government relies entirely on generalized allegations concerning Mr. Cali's purported role within an alleged criminal organization as a basis for asserting that he poses a danger to the community if released pending trial. The Government, however, does not identify any specific circumstance under which Mr. Cali might pose such a danger, does not identify any specific individual to whom Mr. Cali might pose a danger, and does not make any allegations concerning any specific acts of violence in which Mr. Cali engaged either in connection with the charged offense or otherwise. Absent such specific allegations, there simply is no basis for a finding that Mr. Cali presents a danger to any person or the community. See United States v. Patriarca, 948 F.2d 789, 792 (1st Cir. 1991) (affirming finding "that although *in theory* a Mafia Boss was an intimidating and highly dangerous character, the government had not demonstrated that *this Boss* posed a significant danger, or at least not a danger that could not be overcome given appropriate conditions") (emphasis in original); United States v. Hammond, 204 F. Supp. 2d 1157, 1164 (E.D. Wis. 2002) (the government "cannot obtain detention simply by associating defendant with a dangerous organization such as the Outlaws").

7

Indeed and as described below, the only allegations of alleged criminal conduct that the Government could drum up with regard to Mr. Cali are uncharged, primarily non-violent alleged acts dating back more than a decade. See Cantarella, 2002 WL 31946862, at *2 (noting that allegations of "conduct that occurred some seven to eleven years ago" would have been "irrelevant to the determination of whether the Defendant currently poses a threat to society" if the defendant had not engaged in more recent criminal conduct).  If, in fact, Mr. Cali actually poses a real and present danger to the community or any person (which he does not), surely the Government could and would have presented more detailed evidence of same.  That it was unable to do so strongly supports the notion that Mr. Cali does not, in fact, pose a danger to any person or the community if released pending trial.

V.

The Nature And Circumstances Of The Charged<br>Offense Favor Release Pending Trial

Notwithstanding the allegations in the Indictment and the Gov't Mem., the nature and circumstances of the offense with which Mr. Cali has been charged clearly favor pre-trial release.

First, the proffered evidence of Mr. Cali's involvement in the alleged extortionate scheme is objectively weak.  Specifically, it includes only the testimony of one cooperating witness that is purportedly corroborated by consensually recorded conversations in which Mr. Cali is only vaguely "referenced by name."  (Gov't Mem. at 18-20.)  Indeed, the Government concedes that it has no recording of Mr. Cali relating to the offenses with which he has been charged and has offered no other proof of his involvement.  (Gov't Mem. at 20.)

8

Second, John Doe #4 – the alleged victim of the purported extortionate scheme – is of questionable credibility. According to The New York Times, John Doe #4 has been identified as Joseph Vollaro, an individual who "was convicted in New Jersey on federal extortion charges in 1997 and on state loan-sharking charges in 1998, [and] was sentenced to serve concurrent terms for both crimes – three years for the state case and three years and one month for the federal crime, according to court records." See William K. Rashbaum, *Informant in Mob Case Had Power, and a Wire*, N.Y. Times, Feb. 9, 2008. Moreover, according to the New York Daily News, Mr. Vollaro was arrested approximately three years ago in possession of a kilo of cocaine. See Barry Paddock and John Marzulli, *Turncoat taped Gambinos for feds*, N.Y. Daily News, February 9, 2008. In any event, Mr. Cali had no relationship with Mr. Vollaro, and has never met or worked with Mr. Vollaro. Indeed, even the Government does not assert that Mr. Cali and Mr. Vollaro had any contact or relationship.

Third, and even assuming the truth of the Government's allegations (which Mr. Cali does not admit), he is no differently situated than numerous other defendants that the Government did not seek to detain even though they were all charged with the same offenses. As detailed above, 18 other defendants were charged with exactly the same charges that Mr. Cali faces, yet the Government did not seek their detention. Similarly, 5 other defendants were charged with an alleged racketeering conspiracy and the same charges that Mr. Cali faces, yet the Government did not seek their detention either. Simply put, if conditions or a combination of conditions were sufficient to justify the pre-trial release of these 23 defendants, surely there are conditions or a combination of conditions that could be imposed on Mr. Cali that would reasonably assure his presence as directed by this Court.

9

Finally, although a violation of 18 U.S.C. § 1951 is technically a "crime of violence" as defined by 18 U.S.C. § 3156(a)(4)(A), neither the Indictment nor the Gov't Mem. make any allegations concerning any specific acts of violence in which Mr. Cali engaged either in connection with the charged offenses or at any other time.

VI.

### The Government Has Not Proffered Sufficient Evidence
### Of Mr. Cali's Guilt To Justify Pre-Trial Detention

The Bail Reform Act requires this Court to consider "the weight of the evidence against" Mr. Cali in determining whether or not to release him pending trial. See 18 U.S.C. § 3142(g)(2). In this regard, the Government's rationale for Mr. Cali's continued detention is inadequate.

Specifically, the Government relies primarily on innuendo concerning Mr. Cali's purported affiliation with alleged organized crime to color this Court's view of the evidence it intends to offer of Mr. Cali's guilt. Indeed, the vast majority of the Gov't Mem. is devoted to those allegations and insinuations. Stripped of these generalized and inflammatory allegations, however, the Government's proffer concerning evidence of Mr. Cali's guilt boils down to: (1) the testimony of a cooperating witness concerning Mr. Cali's purported involvement in the alleged NASCAR site extortion scheme; and (2) consensually recorded conversations made by John Doe #4 (a/k/a Joseph Vollaro, whose checkered past is described above) on which Mr. Cali's voice does not appear but that purportedly implicate him in the charged offense. (Gov't Mem. at 18-20.) Simply put, the Government's proffer concerning Mr. Cali's guilt is exceedingly thin and objectively insufficient to support pre-trial detention.

VII.

### Mr. Cali's Personal History And
### Characteristics Favor Release Pending Trial

Mr. Cali, age 42, was born and raised in New York, and continues to maintain strong ties to his community. He has lived his entire life in Brooklyn and Staten Island, and currently lives on Staten Island with his in-laws while his home a short distance away is undergoing renovations. Mr. Cali has been married for almost seven years to his wife Roseanne, age 31, and has three small children ranging in ages from almost 2 to 5 years old (Francesco, almost age 2; Salvatore, age 3; and Caesar, age 5). Mr. Cali's family also lives in New York. His parents were born in Italy but are long-time Brooklyn residents (forty-seven years), and his brother lives on Staten Island with his wife and two children. Similarly, the family of Mr. Cali's wife (including her two brothers and her mother) lives on Staten Island.

Additionally, Mr. Cali runs a Brooklyn-based business that imports specialty foods and wine, and has five employees (who provide accounting, office, sales and delivery services). Mr. Cali's business likely will collapse if he is not released pending trial (putting those five men and women out of work at a time when the economy is sliding into a recession).

Finally, as detailed above, Mr. Cali has no criminal history whatsoever – he has never been arrested or even charged with any criminal violation.

In light of this unblemished personal background, there is no rational basis for detaining Mr. Cali based on his personal history and characteristics. The Government has therefore resorted to remote, vague and unsubstantiated allegations concerning four alleged criminal acts to support its argument that Mr. Cali's personal history and characteristics indicate pre-trial detention. But even these alleged acts are an insufficient basis for continuing to hold Mr. Cali. As even the Government concedes, all of the alleged acts are more than ten years old

11

("in the late 1990s"; "in the 1990s"; "in the mid-1990s"; and "in the early to mid-1990s").
(Gov't Mem. at 21-22.)  Moreover, none of those alleged acts resulted in the filing of any
criminal charges and, perhaps most significantly, three out of the four alleged acts do not
constitute acts of violence (alleged operation of "illegal joker poker gambling machines,"[4]
"telephone card fraud"[5] and "loansharking").  (Gov't Mem. at 21-22.)  Finally, the Government
is unable to make any specific allegation concerning violent conduct with regard to the one
alleged offense that might have been considered technically a crime of violence ("overseeing the
Gambino family interest in the annual Italian Feast on 18th Avenue in Brooklyn").[6]  (Gov't
Mem. at 21.)

VIII.

A Combination Of Conditions Could Be Imposed On Mr. Cali That
Would Reasonably Assure His Presence As Required By This Court

In light of the foregoing, we respectfully submit that a combination of conditions
would reasonably assure Mr. Cali's presence as required by this Court.  Specifically, Mr. Cali is
prepared to agree to proffer a $2,000,000 personal recognizance bond to be secured by two
properties, whose owners have volunteered to pledge their properties on his behalf.  These offers
to forfeit substantial assets if Mr. Cali violates his bail conditions cannot be deemed
insignificant, hold a high degree of moral suasion and evidence Mr. Cali's character.  See United

---

[4]     Upon information and belief, arrests were made in connection with "joker poker" machines at Café Italia in Brooklyn.  Mr. Cali, however, was never arrested or charged in connection with that activity.  In any event, Mr. Cali lived just two blocks from Café Italia and near the other locations mentioned in the Gov't Mem. for approximately thirty years.  That he may have patronized any of them is therefore of no consequence.

[5]     Mr. Cali's telephone card business was extensively investigated by federal authorities in the mid-1990s. No charges, however, were ever brought against Mr. Cali.

[6]     In this regard, it bears noting that Mr. Cali lived on 18th Avenue in Brooklyn (where the annual Italian Feast is held) for more than thirty years, has not attended the Italian Feast for approximately seven or eight years, and was never the subject of any complaint by any participant in the Feast.

12

States v. Carbone, 793 F.2d 559, 561 (3rd Cir. 1986) (finding that defendant met burden of producing evidence to rebut presumption that he posed a danger to community largely because others in community vouched for defendant's character by posting residential properties as surety on bond).

Additionally, Mr. Cali is prepared to agree to: (1) surrender his passport and not apply for any other passport; (2) the imposition of a travel restriction to the Southern and Eastern Districts of New York; and (3) the imposition of strict pre-trial supervision.

All of the individuals necessary to facilitate the processing of such a bail package will be present and available to do so at Mr. Cali's February 19, 2008 detention hearing.

## CONCLUSION

For all of the foregoing reasons, we respectfully submit that Mr. Cali should be released pending trial of the referenced matter.

Dated: New York, New York
         February 14, 2008

Respectfully submitted,

LAW OFFICES OF
HARLAN J. PROTASS, PLLC

By: _____
        Harlan J. Protass (HP-2826)
        305 Madison Avenue – Suite 1301
        New York, New York 10165
        T. 212-922-1080
        F. 212-949-8255

*Counsel for Defendant Frank Cali*

13

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on February 14, 2008 I caused a true and correct copy of the foregoing MEMORANDUM OF LAW OF DEFENDANT FRANK CALI IN OPPOSITION TO THE GOVERNMENT'S MOTIONS FOR PERMANENT ORDERS OF DETENTION to be served via ECF on all counsel of record and to be served by hand delivery upon the following:

> Mitra Hormozi, Esq.
> Joey Lipton, Esq.
> Assistant United States Attorneys
> United States Attorney's Office
> Eastern District of New York
> 271 Cadman Plaza East
> Brooklyn, NY  11201

Harlan J. Protass

14